[No. 16969. Department One. May 13, 1922.]

## W. J. JAHN & COMPANY, *Respondent,* v. YAKIMA PRODUCE & TRADING COMPANY, *Appellant.*[1]

ACTION (10)—NATURE AND FORM—LEGAL OR EQUITABLE ACTION. An action for the return of a deposit on the sale of hay is at law and not in equity, where the complaint alleges the contract and part performance, and that the contract was rescinded by the seller's failure to comply therewith.

DAMAGES (34, 36)—LIQUIDATED DAMAGES — SALES — CONTRACT — PERFORMANCE OR BREACH. A forfeiture of a deposit on the sale of hay, as liquidated damages, cannot be claimed by the seller where he was unable to perform his part of the mutual concurrent, and dependent obligations, and could not deliver the quality of hay called for in the contract.

Appeal from a judgment of the superior court for Yakima county, Smith, J., entered July 16, 1921, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Affirmed.

*Hal H. Cole* and *Snively & Bounds,* for appellant.

*Richards, Fontaine & Gilbert* and *Roberts, Skeel & Geary,* for respondent.

MITCHELL, J.—On June 5, 1920, the Yakima Produce & Trading Company, a corporation, entered into a contract in writing with W. F. Jahn & Company, a corporation, whereby the one agreed to sell, and the other to buy, hay, to wit:

"With the exception of 100 tons of timothy and 200 tons of alfalfa, first cutting, which is hereby reserved, . . . all of the alfalfa and timothy hay, first, second and third cuttings, . . . grown and raised on the ranch of the party of the first part, near Satus, Yakima county, Washington, during the season of 1920, the premises in said contract embracing about 500 acres of alfalfa and 250 acres of timothy land."

[1]Reported in 206 Pac. 944.

It was further agreed as follows:

"The price to be paid for the said hay is $25 per ton, f. o. b. cars or in warehouse of the party of the first part at Satus, Yakima county, Washington, and the said party of the second part herein agrees to receive, accept and pay for, as herein provided, each cutting of the said hay as soon as the same is baled, either for immediate shipment or at the warehouse of the party of the first part at Satus, Washington, for storage."

"It is understood and agreed that the party of the second part may, if it so desires, promptly inspect the said hay and supervise the weighing thereof at the time same is loaded on cars, of such portion as is delivered on cars, or at warehouse of such portion as is delivered to said warehouse . . . but that the said party of the second part can only reject such portion of said hay as shall be found to be wet, musty, or moldy, providing, however, THAT ANY HAY DAMAGED BY RAIN AT TIME OF CUTTING MUST BE REJECTED AT HARVEST TIME, and that party of the second part shall have no claim for damages on account of heating, shrinkage, or for any reason whatsoever as to the condition of said hay after the same is loaded on cars or placed in said warehouse at Satus, Washington."

According to the terms of the contract, Jahn & Company deposited with the other party the sum of $15,000, with the understanding that the hay should be paid for at the rate of $25 per ton as delivered, until such time as the deposit would take care of the balance of the hay to be delivered. During the year the hay of the first and second cuttings covered by the contract was delivered and paid for, and on the 17th day of December, 1920, complaint was filed by Jahn & Company to recover the sum of $12,368.45, alleged to be the unearned remainder of the deposit. A trial by jury resulted in a verdict in favor of the plaintiff in the sum of $8,000, and from a judgment entered thereon, the defendant has appealed.

Generally, the principal controversy is over the character or the theory of the action and the sufficiency of the evidence to sustain the verdict. Appellant contends the action is one in equity, that the respondent should recover the whole of the remainder of the deposit or nothing at all, that the verdict was advisory only, and that, under the proof, the respondent cannot prevail. The argument that the action is on the equity side of the court seems to rest largely on a statement in the complaint that the contract had been rescinded and that the respondent is entitled to the balance of the deposit on hand, and upon the prayer for rescission and judgment for the balance of the deposit, together with affirmative allegations in the answer upon which a forfeiture of the remainder of the deposit is demanded. The complaint declares on the contract and alleges the making of the deposit. It alleges the receipt of hay and payments for the first and second cuttings; that a portion of the third cutting (the exact amount being unknown) was damaged by rain at the time of cutting, and that the respondent at that time notified the appellant that, because of that fact, it would not accept the hay; and that the remainder of the third cutting, after being stacked, was exposed to heavy rains, and while in a wet and unfit condition was baled, over the objections of the respondent, and as a result it became and has continued to be wet, musty, moldy, discolored and unfit for sale or use; that, by reason of the damaged and unfit condition of the hay, it was rejected; and that, because of the failure of the appellant to comply with the contract, it became rescinded and at an end; and that the respondent is entitled to the return of its deposit of money, or the remainder thereof, for which demand had been made and payment refused. The complaint sets up some minor items of account

because of underweight of hay accepted. The prayer of the complaint was, among other things, for judgment for the balance due the respondent out of the deposit held by the appellant, and for general relief.

Many of the allegations of the complaint, including the damaged condition of the hay and the rejection of it by the respondent at the times exacted by the terms of the contract, were denied by the answer. Upon completing the issues, the appellant deposited the jury fee and demanded a jury trial, which was given it.

We are satisfied the action was one at law, and notwithstanding many objections to instructions given and to the refusal of the court to give instructions that were requested, the case was properly submitted to the jury under full and fair instructions. On the subject of the damaged condition of the hay and notice of the rejection of it, as well, also, all other issues as to the facts, there was a decided conflict in the evidence, but entirely sufficient on behalf of the respondent to justify and sustain it. The claim that the person to whom notice of rejection in part of the hay was given was not the authorized agent of the appellant cannot prevail, because of a conflict in the evidence on that point which was submitted to the jury under an instruction which, though criticized by the appellant, was correct.

The appellant admitted by the testimony of its president it still had in its hands about $12,400 of the deposit, which it claimed as liquidated damages because of the alleged refusal of the respondent to accept the third cutting of hay, claimed by appellant to have been sufficient in quantity to amount to that sum at the contract price, and because of a provision in the contract that, should the respondent fail to accept and pay for the hay, the appellant, at its option, could terminate and cancel the contract, in which event the deposit and

undelivered hay should be forfeited to the appellant as damages liquidated for the failure of the respondent to perform the contract. The testimony is abundantly ample to sustain the theory of the finding of the jury that the appellant was unable to comply with its contract to deliver, to the extent of $8,000, or 320 tons at $25 per ton. It would be manifestly unjust to allow a claim of forfeiture in favor of one confessedly or proven to be unable to perform his part of an agreement containing mutual, concurrent and dependent obligations. Or, viewed in another way, since obviously, by both the pleadings and the evidence on behalf of the respondent, as well, also, the finding of the jury, there can be no question of the good faith of the respondent in its rejection of the hay, and since the rejected hay consisted more largely of hay unfit by the terms of the contract that was commingled with such as was fit and suitable, to now permit the appropriation by the appellant of this large amount as liquidated damages would constitute the declaration of a rule that a purchaser must take goods unfit for use, else he must assume the risk of a large amount of money, together with the goods, in spite of the exercise of the utmost good faith. The deposit in this case has served its purpose, under a proper construction of the contract and the situation of the parties, by protecting the one to whom it was made to the full extent warranted by the facts shown in the record.

Affirmed.

PARKER, C. J., FULLERTON, TOLMAN, and BRIDGES, JJ., concur.